**RECEIVED**

OCT - 3 2011

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Stephen A. Bonner )
_____ )
_____ )
_____ )
(Name of the plaintiff or plaintiffs) )
) CIVIL ACTION
)
v. )
) 1:11-cv-06939
Community Service ) Judge Amy J. St. Eve
Options Inc. ) Magistrate Judge Maria Valdez
_____ )
(Name of the defendant or defendants) )

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

1. This is an action for employment discrimination.

2. The plaintiff is  Stephen A. Bonner  of the county of  Will  in the state of  Illinois .

3. The defendant is  Community Service Options Info , whose street address is  6345 S. Western Ave. , (city) Chicago (county) Cook (state) IL (ZIP) 60636

   (Defendant's telephone number) (773) - 437  4700

4. The plaintiff sought employment or was employed by the defendant at (street address)
   6345 S. Western Ave.  (city) Chicago
   (county) Cook (state) IL (ZIP code) 60656

5. The plaintiff [*check one box*]

   (a) ☐ was denied employment by the defendant.

   (b) ☐ was hired and is still employed by the defendant.

   (c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,
   (month) July, (day) 15, (year) 2009.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

   (a) The defendant is not a federal governmental agency, and the plaintiff [check one box] ☐ has not ☒ has filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

   (i) ☒ the United States Equal Employment Opportunity Commission, on or about
   (month) July (day) 15 (year) 2009.

   (ii) ☒ the Illinois Department of Human Rights, on or about
   (month) July (day) 15 (year) 2009.

   (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days.**

   It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and
   (a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

☐ Yes (month)_____ (day)_____ (year)_____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month) __July__ (day) __11__ (year) __2011__.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☒ YES   ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☒ YES   ☐ NO, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue*.

(b) ☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) __July__ (day) __11__ (year) __2011__ a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's *[check only those that apply]*:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3



(c)☒ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)☐ Religion (Title VII of the Civil Rights Act of 1964)

(g)☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [check only those that apply]

(a)☐ failed to hire the plaintiff.

(b)☒ terminated the plaintiff's employment.

(c)☐ failed to promote the plaintiff.

(d)☐ failed to reasonably accommodate the plaintiff's religion.

(e)☒ failed to reasonably accommodate the plaintiff's disabilities.

(f)☐ failed to stop harassment;

(g)☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)☒ other (specify): _demoted plaintiff from manager to master R_

and just ½ hour before, termination demoted plaintiff from Master QMRP to FSC and docked salary by $5000.00 per annum

13. The facts supporting the plaintiff's claim of discrimination are as follows:

Documentation by a physician and licensed clinical social worker requesting accomodations, which were ignored

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a) ☐ Direct the defendant to hire the plaintiff.

    (b) ☒ Direct the defendant to re-employ the plaintiff.

    (c) ☒ Direct the defendant to promote the plaintiff.

    (d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e) ☒ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

    (f) ☐ Direct the defendant to (specify): pay double back pay plus expenses,

5

_____
_____
_____

(g) ☒  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒  Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)
_Stephen A. Bonner_

(Plaintiff's name)
Stephen Anthony Bonner

(Plaintiff's street address)
414 W. 34th Street Apt. 116

_____

(City) Steger  (State) IL  (ZIP) 60475

(Plaintiff's telephone number) (708) - 898-1996

Date: 9/25/11

1. I am bringing formal Law Suit against Community Service Options Inc. and David Ogunbode for violating the Americans with Disabilities Act and the Civil Rights Act. They CSO Inc. refused to allow reasonable accommodations to an individual Stephen Anthony Bonner Plaintiff who has a disability.

2. I Stephen A. Bonner am a disabled American I suffer from Bipolar I disorder and David Ogunbode representing Community Service Options Inc. was aware that I was disabled while refusing to provide reasonable accommodations. Ogunbode was aware I was being treated by a physician and was under his care and was also under the care of a Licensed Clinical Social worker. Dr. Alan Dzuda was my psychiatrist and Ms. Carol Bruel was the social worker who both requested that accommodations be made on my behalf.

3. Individual Service Coordinators had a base caseload of 75 individuals with disabilities and were required to make quarterly visits to their homes, day programs and annual staff meetings. They are required to write a 4 page note on each visit, mail it to them and providers in 7 days.

4. They are required to write a redetemination of eligibility annually a service plan, maintain current ancillary documents; such as physical exams, dental exams, Medicaid cards etc. along with assisting in obtaining additional services i.e. speech, physical therapy and home modifications. If needed placement issues and abuse and neglect charges.

5. I was assigned without compensation the duties of Training Coordinator and I kept log of all abuse and neglect cases.

6. I was assigned July 15, 2009 a caseload of 105 Individuals and demoted from Manager to "Master QMRP"; I had only little more than 2 ½ months to visit all of these individuals.

7. Completion of all visits, notes and maintaining files that are already current, is a full time job. Correcting 2 years of errors permitted by Ogunbode, who hired and incompetent employee and refused to listen to a more experienced ISSA Manager is analogous to placing me in a "No Win" situation.

8. I was under the supervision of Juanita Irvin who had never been a Individual Service Coordinator working an Individual Service and Support Advocacy case load of 75 let alone 105. She was inexperienced and knew little about the position and was unable to answer questions or solve problems.

9. All other "Master QMRP's" were allowed and granted a full day out of the office to schedule, plan and do work on their personal computers. Irvin approved my request only to have Ogunbode deny it. I only requested that I be granted what they were given in order to do the same and considered it reasonable accommodations due to the sudden unexpected demotion. That in itself was unwarranted and unfair.

10. In reality the work was not the same. Take for example the 25 files reviewed with major issues. Multiply that number by four and there were 100 files I had to correct. In 2002-2005 I had

unlimited access to the files now Saturdays and Sundays the building was closed. I still worked over 100 hours every two weeks. I was expected to have this done by October 1st 2010.

11. The other staff and "Master Q's" had their caseloads for years as the other Individual Service Coordinators. Irvin continued to harass my work using a red pen as if I were in grade school to circle and demand that I rewrite a note if I made a typographical error. If this has become a new rule to follow it is only an attempt to justify what was done to me.

12. I Stephen A. Bonner had rose from a worker not even a Qualified Mental Retardation Professional when I was hired in May of 2002 to past and Individual Service Coordinator with a caseload of 75 individuals to management in 2004 under the supervision of Renee Lumpkin. I was awarded employee of the year in 2003.

13. When David Ogunbode assumed the position of Clinical Director I lost all support of upper management. He assumed all responsibilities of hiring and terminations and progressively eroded all decision making from the managers including the Assistant Clinical Director Jill Hall.

14. He David Ogunbode representing Community Service Options Inc. mounted a campaign to eliminate any and every employee that possessed a disability starting with Dennis Howard who utilized a wheelchair for mobility. He then orchestrated with Lumpkin the termination of Ms. Annie Perusky who is clinically deaf but utilizes amplifiers and lip reading and sign language to communicate.

15. After they had accomplished this feat he went after me. I contacted in approximately May of 2009 Dina Taylor Comptroller and former Human Resources Director for the Agency that Ogunbode was "out to get me". She simply stated that it was not good.

16. In 2007 against my better judgment Ogunbode hired an employee who was incompetent and placed her under my supervision. Her name was Demekia Dixon. Dixon over the next two years managed to create a debacle of a caseload of 84 individuals with disabilities.

17. In 2009 Assistant Clinical Director Jill Hall discovered a plagiarized visiting note by Dixon. Ogunbode refused to dismiss her after this clear violation of policy. I was forced to supervise her and I repeatedly counseled Dixon and outlined each quarter exactly what she needed to bring her files into compliance.

18. Finally when I terminated her he became vindictive and instead of hiring a competent replacement he forced me to take the caseload of 84 and added 21 cases to make it 105 for me to maintain my salary. In less than three months I was required to visit and write Individual Service and Support Advocacy Notes for all of the individuals. In addition I was to correct the errors Dixon had made which are enumerated In 25 cases indicative of all 105.

19. I made all the visits and notes. I received and 83% evaluation. I requested the same allowances that all other employees that had caseloads of 100 individuals that I be allowed one day a week out of the office. Ogunbode refused despite my physicians and social workers requests for accommodations.

20. I filed a complaint with the EEOC and there was no mediation Ogunbode did not acknowledge or respond and disregarded any fair resolution only stating I didn't "deserve it". The next quarter from October 31 through the shortened holiday season I again met all goals of 100% of the visits and notes and making inroads into the errors of Dixon. I worked and billed over 100 hours every 2 weeks and my billing and time sheet matched impeccably.

21. The complaint was only to request the day out of the office in order to plan, schedule and write notes. I required this to maintain my anxiety level.

22. I had arthroscopic surgery on my left shoulder on January 5, 2010 and still had worked through pain to accomplish the feat. Dr. Robert Coats gave me a prescription for light duty only. I returned with an order to lift 0 lbs. I was able to type and drive.

23. I again received an evaluation of 83% which I signed in the presence of Irvin and Ogunbode January 29, 2010, the evaluation was written January 11, 2010. I was not terminated on January 11, 2010.The reason is that the evaluation was changed.

24. Ogunbode then told me my salary would be cut by 5000 dollars and I would now have less than a hundred cases. I informed him that would cause me to lose my family, home and vehicle. I had a Chapter 13 bankruptcy and it would be hurtful to say the least. I told him and Irvin that cutting my salary by 5000 dollars would cause me to lose my family, my home and my vehicle in that order.

25. After receiving the call from Ms. Fielding EEOC mediator who I phoned after the meeting and her stating she would call him about my request, Ogunbode decided he would personally attempt to destroy my life by terminating me. He then demanded I stay while he gave further instructions, I still have belongings in that office he never returned.

26. Falsifying documents and shredding documents are not unusual for the agency, we were forced and coerced to change and then falsify time sheets to account for the misuse of a Pre Admission Screening or PAS grant. I attempted to let Lumpkin Executive Director that Ogunbode had ordered that no one bill for Pre Admission Screening.

27. I phoned Ms. Lisa Fielding of EEOC the mediator and was instructed to file a retaliation charge. She stated she would phone him to see if there was a response to mediation. I signed the evaluation at about 4:00pm at 4:30pm he terminated me. Ogunbode retaliated against me for performing a protected act of contacting EEOC which is my Civil Right.

28. I received in the mail a falsified evaluation signed by Irvin indicating a 66% date in December. If I was to be terminated why allow me to work an additional 2 weeks.

29. There was discrimination by Community Service Options Inc. for violating making reasonable accommodations based on my disability and my Civil Rights for contacting the EEOC and filing a charge of retaliation. Ogunbode may also be charged with discriminating against me for my nation of origin am multicultural, racial and different spiritual beliefs.

30. An example of this is when Jill Hall, Denise Hatten both managers and Hall Assistant Clinical Director and Ogunbode brow be me about their "born again" religious beliefs. This caused a

great deal of anxiety for me which they teamed up to put me down cause I felt they were all phonies and didn't buy in to their rhetoric.

31. It is uncertain why he discriminated against me it wasn't my work. I attest that my aspirations for excellence can be demonstrated in that I am a former medical student. I have a 4.0 grade point average in the course work I took to become a QMRP. I have currently a 3.5 grade point average at Keller Graduate School of Management through 2010.

32. I quote the words of Psychologist Jeffery Karr who examined me twice once in 2010 and again in March of 2011, "You are a golden gem who has yet to reach its full potential". Dr. Karr stated, "If they are out to get you it's not paranoia."

33. I have had over 25 hospitalizations and have worked my way off Social Security Disability twice I have had to start my life over 3 times in my adult life. I have managed to stay out of the hospital for 13 years and have become productive and successful. As a direct result of this brutality I was Hospitalized and Madden Mental Health Center for a month and left homeless until I received my Social Security Disability Insurance in May of 2011.

34. As a direct result of Ogunbode's inhumanity and vindictive nature I must start again. I have collection agencies writing on a daily basis and the inability to continue my education as a direct result of my experience with Ogunbode and CSO Inc. I have been hospitalized in a State Institution and categorized as a danger. At the age of 55 I am not a young man inexperienced or foolish. I know right from wrong even if they don't. Their entire defense will be to save face at my expense.

35. Arrogance has no place in justice and the use of "At Will" is a cop out for the freedom to abuse anyone who doesn't bow to their beliefs. To give an example on company time Jill Hall, David Ogunbode and Denise Hatten brow beat me on their religious beliefs, which is an abomination and travesty.

36. Following repeated psychiatric hospitalizations exceeding over 25 at a minimum. I was placed in seclusion sometimes in full leather restraints and on every known psychotropic medication. What type of relationship with the Creator could I have developed to have survived and make the accomplishments I have.

37. Who is David Ogunbode to decide what I deserve or need what medical school did he graduate from or even attend? He does have a MSW but is not a Licenses Clinical Social Worker as Ms. Bruel.

38. This is not a frivolous suit, it must be made and I must prevail because Lumpkin, Ogunbode and CSO Inc. must be stopped. They cannot hide from themselves everywhere they go there they are.

39. It is not enough that they earn an above average salary only to fear losing their accustomed life style if they fall out of favor with the in-group at CSO Inc.

40. To accomplish the task set before me with limited access to the files would take a plan not a façade of correcting a sample for review. I developed a plan not only for Dixon, but for myself.

        To give Irvin a sample would be part of the hoax DHS plays with the PAS and other agencies to ask for only the files they chose.

41. My efforts were to manage and correct the 100+ cases and this would take time and energy by striking each case as the visits occurred. Noting that at least 10% ended up in cancellations and repeated trips along with several requests.

42. My honesty despite the fact that any ISC could be chosen for this scrutiny would not allow me to approach the job any other way. It was this same effort that had earned me the accolades I was privy to early in my career.

43. This is the reason for my response of shock and outrage at the turn of events. My sensitivities to injustice along with my State and Federal reviewed and documented disability gave no cause for Ogunbode to ignore my request. Neither he nor Irvin had ever managed a caseload in ISSA and had and have no clue as to how it should be accomplished. Their origin is screening and "passing" the cases on to ISSA.

44. If Community Service Options Inc. wants to claim that their actions were based on "policy" they should research the definition. CSO Inc. will discover that a policy is a general course of action not a hard and fast rule. Policy was not followed when Dixon plagiarized her work which would have been immediate termination.

45. In final analysis I have a documented and supported disability. I requested and was refused reasonable accommodations that would not have caused undue hardship for the agency as a result I was unjustly terminated and caused irreparable damage to myself and my family along with a subsequent hospitalization.

46. Damages requested are in excess of 200,000 USD.

47. It is now September 24, 2011 I just received the investigative report and almost nothing has changed however the accommodations he offered me were to work on my vacation time and use that to accommodate and catch up on the days out of office I requested to work basically saving the two hour needless drive to be micromanaged and by him making it just more uncomfortable escalating my anxiety level.

48. The most frightful memo and untruth dated February 24, 2009 copied to Jill Hall and Renee Lumpkin. That memo was created post January 29, 2010. If either had received that memo Renee would most definitely have met with me and asked what in the world was going on. Jill would have demanded to see the weekly updates. There are none because none were requested. That memo was typed as a cover up for the lack of supervision and the demanded permissiveness of Dixon's incompetence.

49. Ogunbode as can be seen in the memo changed the font level on the last paragraph to fit the fabrication all on one sheet of paper and dismiss my charges with his arrogance. Why attempt to add anything else by going through that effort. He has overstated his assertions in order to save CSO Inc. and Lumpkin. I would have changed the font level in the entire document he is simply unprofessional and a liar.

50. I attest that the scheduled meetings for supervision with Ogunbode never took place with any manager.

51. If Ogunbode had asked for updates he would have gotten them.

Stephen A. Bonner
414 W. 34th Street Apt.116
Steger, IL 60475

(708) 898-1996

*[Signature: Stephen A. Bonner]*
9/26/11
10/3/11

EEOC Form 161 (11/09)     U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Stephen A. Bonner
321 Sauk Trail
Park Forest, IL 60466

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

Certified Mail 7001 0320 0005 8567 0307 CP

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2010-02050 | Diana C. Calia, Investigator | (312) 869-0134 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

John P. Rowe,
District Director

7-25-11
(Date Mailed)

Enclosures(s)

cc: COMMUNITY SERVICE OPTIONS INC

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: <br> ☐ FEPA <br> ☒ EEOC | Agency(ies) Charge No(s): <br> 440-2010-02050 |
|---|---|---|

Illinois Department Of Human Rights **and EEOC**
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Stephen A. Bonner | (708) 747-5741 | 09-12-1955 |

Street Address: 321 Sauk Trail, Park Forest, IL 60466

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| COMMUNITY SERVICE OPTIONS INC | 15 - 100 | (773) 471-4700 |

Street Address: 6845 S. Western, Chicago, IL 60636

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest / Latest: 01-29-2010

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with Respondent on or about May 13, 2002. My most recent position was Individual Service Coordinator Manager Qualified Mental Retardation Professional (QMRP). On or about September 11, 2009, I filed an EEOC charge of discrimination (EEOC # 440-2009-06260). On or about January 29, 2010, I was discharged.

I believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

RECEIVED EEOC
FEB 16 2010
CHICAGO DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 2/12/2010 *[signature: Stephen A. Bonner]*
Date / Charging Party Signature

NOTARY — When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)